Please be seated. Thank you, gentlemen. Good morning again. We have three more argued cases. A Veterans case, a Little Tucker Act case from the District Court, and a Patent case from the District Court. And the first of those cases is Phillip Branson v. Department of Veterans Affairs, File 14-2014-7033. Mr. Leonard. Good morning, Your Honors. I am Michael A. Leonard, representing the veteran Phillip O. Branson. Essentially, the Veterans Court made five prejudicial errors in this case, which are reviewable by this court. First, it failed to apply the proper legal standard for determining whether the BVA had correctly determined the earliest possible effective date for service connection for the veteran's PTSD. Second, the Veterans Court failed to address this court's case law, defining VA's antecedent duty to sympathetically and liberally construe the scope of a veteran's claim for compensation benefits, even though that case law was properly raised by the veteran both before the BVA and the Veterans Court. But just mentioning cases doesn't give us jurisdiction if the issue is applying a case to fact. Now, aren't these all applications of law to fact? We have a Q claim, you're asking for an earlier date, and that's application of law to fact. That's not the issues in this case, Your Honor, the application of law to fact. Obviously, the government would like the courts to believe that. I know that's what you're trying to tell us. Well, in this case, these are five legal errors that do not involve the application of law to facts. Even if sympathetically reading, the veteran's filing might constitute an informal claim. It at least has to express a sufficient intent to apply. Do you agree with that? I do. The regulation requires that there be an intent to apply for benefits, and in this case, there clearly was an intent to apply for benefits because the veteran filed an application for compensation benefits in 1982. You don't agree that it is a sufficient intent to apply for it, the service-connected disability? No, Your Honor, I think this court's case law provides otherwise. You don't think Moody v. Princeffi says that? No, Your Honor, I don't think it says that at all. What do you understand the government's position to be, that he had to say, I want PTSD benefits? I think that's what the government is saying, but I don't think the court's case law says that. And how do you think the requirement of identifying the benefit sought is satisfied? Just by putting in evidence that would lead to... Just identifying evidence that might help to support a PTSD claim? I think we have to ask, what is the benefit being applied for? VA likes to think about claims as being a claim for service connection for PTSD or for diabetes or whatever condition, but that's not reality. That's not what veterans do. They file an application for compensation and they put treatment dates and they state generally why they're applying, which is later defined in other things like hearings and their notices of disagreement and substantive appeal and so forth, if it goes on appeal. But the benefit is VA disability benefits. That's what the veteran is applying for. The benefit has to be based on a service-connected ailment, so we are getting into that. He just doesn't come in and say, I want compensation. Well, I think this court's precedence basically says that if a veteran comes in and says, I want compensation, and the evidence of record, including his claim and medical evidence of record and his testimony and so forth, if that reasonably raises a claim for a particular condition that he did not specifically mention in his claim, that that raises the claim itself and the benefit is identified. Do we have his claim that was submitted in 1982 or whatever the year was? Yes, we do. What page of the appendix is that? 23, Your Honor. 23. So what's your contention? The form doesn't require a specific identification of the condition? A veteran is not a medical professional, and a lot of times the condition that he claims is not what he ends up getting service connection for. Well, item six is nature of sickness, disease, or injuries for which the claim is made. And so he describes the vascular disease, and what you're saying is that later on when the PTSD information came out, it's as though he should be treated as though he'd put that in box six, right? Is that a fair statement? Well, it would have the same effect. He does say service aggravated, and what in service aggravated it was developed later in developing the claim, and VA has a duty to sympathetically and liberally develop the claim. And in this case, there's a plethora of evidence that he was suffering from PTSD or from a mental disorder, and that that's what aggravated his heart condition. Are you familiar with our recent decision in Young? Not offhand, Your Honor. Well, it says that a PTSD has to be supported by a medical diagnosis that the veteran had PTSD at the time that he's trying to say the claim should date back to. Well, Your Honor. Which wouldn't be the case here, because if I understand correctly, there wasn't any medical diagnosis of PTSD in 1982. Well, once VA recognized a claim, which it did in 1989, it sent him for an examination, and he was diagnosed with PTSD. Yeah, but he wasn't diagnosed with PTSD as of 1982 is the problem. He didn't have a specific diagnosis of PTSD, but there was evidence in his service medical records that he was treated for a mental disorder, both on an inpatient and outpatient basis in service. Yeah, Young seems to say that's not sufficient, but since you're not familiar with the case, you can't answer it. I'm not too serious, but it's clear from this court's precedence that if there's sufficient information to put the secretary on notice after a sympathetic reading of a claim, that that claim has been filed then. Now, in Young, I may have been talking about service connection for the condition rather than the effective date. I'm not convinced. He was talking about the effective date. Well, I really couldn't comment on that, Your Honor. I did not prepare that case. I would point the court to Roberson at 1384 where the court says that once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible and additionally submits evidence of unemployability, the identity of the benefit sought requirement of section 3.155A is met. And then, of course, later cases have stated that Roberson does not just apply to TDIU. And so the question I think Judge Lori raised was the benefit sought. And here, the identity of the benefit sought was met by the evidence of record that showed that he was suffering from symptoms of PTSD, at least of a mental disorder. So to continue what was the list of things, the third legal error that the Court of Appeals for Veterans claims made was that it failed to address the veterans' arguments based upon the case law, which we had brought up before the court and had also raised before the BVA. Fourth, the Veterans Court failed to apply the proper legal standard for determining when a remand to the BVA is required, where the BVA failed to address all the pertinent case law and the veterans' arguments based on that case law. And fifth, the Veterans Court failed to apply the proper legal standard for determining when a remand to the BVA is required, where the BVA failed to consider all the pertinent evidence of record. 38 U.S.C. Section 7261A provides that the Veterans Court is required to decide all relevant questions of law to the extent necessary to its decision and when presented. And here, it did not do that in three different ways. First, as in Paris, neither the single-judge memorandum decision nor the order from the three-judge panel provides any indication that the Veterans Court considered this court's controlling case law here. It also did not comply with that statute because it did not consider the cases specifically raised by the appellant both before the court and the board concerning that law. And thirdly, it did not consider the veterans' arguments to the court based on that case law. And all three of those errors are errors of 7261A. Mr. Leonard, you wanted to save a few minutes. You still have a few. You can use them now or save them as you wish. Well, I'd be happy to answer any further questions the court may have. Otherwise, I will rest on my brief and reserve the rest of my time for rebuttal. We will hold it for you. Thank you. Ms. LaGrange. Thank you, Your Honor. May it please the court, I'd like to address a few arguments that were just raised. The government's position, as I understand it, that was adopted by the CAVC is that the veteran, the requirement to identify the benefits sought requires that the veteran say, I'm seeking compensation for PTSD. Am I understanding that correctly? No, Your Honor. That's not our understanding of what the board did. What the board actually did was say that was only one piece of evidence that it looked to in rendering its conclusion that there was no evidence that the veteran had actually intended to seek PTSD benefits back in 1982 or 1983. Well, so what is the veteran supposed to do? I mean, he said, I'm suffering from these symptoms, which are symptoms of PTSD. So what's the theory as to what he should have done that he didn't do? Well, Your Honor, I'm not sure that the question could be answered as to what he should have done. What the board was doing was determining whether or not, in the context of Q, whether or not there was only one reasonable interpretation that could have been drawn from the evidence that they had at hand. Now, in this case... I want to know what the legal standard is and to make a judgment as to whether it's consistent with the Roberson line of cases. So you need to tell me what the legal standard is. What's the requirement? When the regulation says he has to identify the benefits sought, what is it that he has to do? You say he doesn't have to say, I'm seeking benefits for PTSD. What does he have to do? The veteran has to indicate in some way that he's suffering from PTSD and wants compensation for those benefits. By saying that he's been attending therapy sessions and needs to have compensation for that therapy, that he is suffering in terms of lack of employment. In this case, we don't have that. He was employed by the Muncie Police Department. Some indication... What is he supposed to say? He described the symptoms here, which are symptoms of PTSD. So what you're saying is he has to say, I have these symptoms and I'd like compensation for those symptoms? Yes, Your Honor. In some way, shape, or form, maybe not in those exact words, but he needs to express to the VA that he needs compensation for those symptoms. Supposing he says, can you help me? Can you help me? Then, yes, the VA at that point would, as it did, sympathetically construe his claims. But in the fact of this case, that wasn't the case. He did mention that he had suffered from battle shock back in the 1960s, based on his experience in Vietnam. But he did so in terms of seeking compensation for his aggravated heart condition. His claim was, you know, I'm at the police department. I hesitate to put in for this because I don't want it to be writing me for the rest of my life, which is essentially what he said in the hearing. Why does he have to say, I'd like compensation for these symptoms? He's asked for compensation. He's filed a claim form. And, you know, he's described symptoms, which I think everybody agrees now are symptoms of PTSD. Why under the Roberson line of cases isn't it sufficient to describe the symptomatology? And then, you know, he's pro se. And those cases seem to say, well, you've got to treat that as an informal claim. Well, even under the Roberson line of cases, Your Honor, that is an issue of application of law to fact because whether or not the evidence... No, it's not. We're dealing with what the standard is. If the standard says, well, he can't just describe the symptoms. He's also got to say, I want compensation for those symptoms. That's a legal requirement that is being imposed here. The question is whether that legal requirement is inconsistent with Roberson line of cases. So the legal requirement is set forth in 38 CFR section 3.155A. There's an application of that that says you can't just describe the symptoms. He's got to say, I want compensation for the symptoms. That's what you say. That's the legal standard. The question is, is that legal standard consistent with a Roberson line of cases? Absolutely, Your Honor. It's absolutely consistent. This court has held so in two notable cases, Robinson v. Shinseki, and Semraj v. Principi. Semraj is 357 S. 3rd, 1370. And at page 1376, this court discusses the interplay between the duty to sympathetically develop claims and what that means for the VA. The court has a similar analysis in Robinson v. Shinseki, which is at 557 S. 3rd, 1355 at page 1361, in which this court states that when claims have no support, they need not be considered even under the VA's duty to sympathetically construe the scope of the claims being made. This isn't a question of no support. This is a requirement that the veterans say, I have these symptoms. Certainly there was support for that. He testified to the fact that he had the symptoms. And you're saying, no, no, no. The Veterans Administration doesn't have to treat that as a PTSD claim, even though everybody knew that those were PTSD symptoms, because he didn't take the additional step of saying, I want compensation for those symptoms. Yes, Your Honor. But what case says that that's a proper requirement to apply under the Roberson line of cases? Well, the first is that it states it by regulation, Section 3.155A. Well, that doesn't mean the whole Roberson line of cases is interpreting that regulation and saying that it doesn't require stringent spelling out of what's being asked for. Well, in Roberson and Comer, this court addressed the application of those three elements, of the elements of Section 3.155A, in the context of a TDIU claim. Now, in that particular case... And in those cases, the veteran didn't say, I'm claiming TDIU. Yes, Your Honor. But the key distinction between those cases and this case is that the court was determining whether or not the VA should have inferred an informal claim for TDIU based on total disability, based on individual unemployability. Basically, whether or not the veteran needed to receive compensation because of an inability to work, based on his medical condition. But the cases didn't require him to say, I'm unable to work and therefore I like money. I don't read those cases as saying that. Well, those cases did say that in those cases, what happened was that the veteran was seeking medical compensation for a medical disability and seeking the highest rating available to the veteran. And also submitting evidence of unemployability. All three of those things combined, this court held was evidence sufficient to constitute the element of intent necessary for Section 3.155A. Isn't the government's position that by seeking compensation for heart problems, that the veteran actively excluded anything else? No, Your Honor. That is not the case. And in fact, the board in a 15-page analysis went through Mr. Branson's previous psychological history. And I would like to go back to Young, which was just issued last month, in which this court first said, does not have jurisdiction to review factual findings of when a disability was claimed or service connection established. But more relevant to your question, interpreted Regulation 38 CFR 3.304S, which said that service connection for PTSD requires a medical diagnosis. Now the board in this case did go back through his medical history and look for those things. That discussion in the board... Young may preclude the claim here, but nobody's addressed that down below. And I'm not sure that it's appropriate for us to say, well, the claim could have been rejected on Young grounds, so reaffirm. The real question here, and it seems to me to have some significance across the board, is whether just describing the symptoms in the context of a disability claim is sufficient, or whether the veteran also has to take the additional step and say, I want compensation for those symptoms. Well, without being able to speak to every set of circumstances that might become before the BPA in this court, I will say in this particular set of circumstances, the board examined all of the evidence that was available to it, and in this case, without having an actual form that says... You know, you guys do this all the time. You say, oh, well, there's a lot of facts here, so there must be a factual case. But there's a standard that's being applied, and you have yourself described what the standard is. And the question is whether that standard is consistent with the Roberson line of cases. You may be right, you may be wrong, but there's a legal issue there. It's not just a factual issue. Well, to the extent there's a legal issue about whether or not Section 3.155A conflicts with the Roberson and Comer and Moody line of cases, that's simply not the case. The court addressed that issue in Ellington v. Peake. In that particular case, the veteran had applied for leukemia benefits in 1990 and listed on a form diabetes and hypertension as secondary symptoms of that claim. And then later, the veteran filed an informal claim for diabetes and hypertension. Even later, he wanted an earlier effective date for service connection for diabetes and hypertension based on the fact that he had listed those as symptoms of his earlier condition, and this court held that that was a quintessential application of law to fact over which it doesn't have jurisdiction. So that, to me, illustrates Ellington v. Peake, which the citation is 541S31364, Federal Circuit, 2008, and it was cited in the briefs, Your Honor. As Your Honor also mentioned, this court's opinion in Moody v. Principi recognizes the same principle that the actual application of whether or not the VA sympathetically contributes to the claim. We keep coming back to, oh, this is just facts, but it's not just facts. The question is whether the standard that's being applied is a legal standard, and that is whether the veteran has to say, here are my symptoms, I want compensation for it, or whether it's sufficient for him to say, here are my symptoms, and then it's up to the VA to treat that as an informal claim. That's the legal issue. The legal standard is set forth in 38 CFR 3.155A. No, it's a question of how to interpret that. It's been interpreted, you say it's been interpreted to require that the veteran say, here are my symptoms, I want compensation for those symptoms, and that was what was missing here. Isn't the context here that he was seeking claims for a heart condition? Yes, Your Honor. He was seeking compensation for a heart condition, and he mentioned his experiences in Vietnam because they are what he claimed aggravated his heart condition. Now, in 1989, when he thought that he needed compensation for PTSD, the VA then conducted a medical examination, realized that he was suffering from PTSD, and then awarded him benefits. Later, when he thought increased benefits... So the question is not whether he should get PTSD benefits, he's getting them. Yes. The question is whether he should get them at the time when he was only presenting a heart condition claim. Yes, Your Honor. The dispute here is whether or not the veteran should receive benefits from going back to 1982. So it's a seven-year period of time between 1982 and 1989 at 50% rating for PTSD. And just to briefly address two other issues that came up, to the extent Mr. Branson argues that the VA and the Board didn't consider case law, they did consider Hodge and Moody and that line of cases. That can be found in the record at page 98. And again, the heart of this case is application of law to fact, and that's an issue over which this Court does not have... And is there a difference between not considering and, on the other hand, considering but not writing about? Your Honor, this Court's precedent is well established that even when a court does not explicitly mention one of the litigants' arguments, that does not necessarily mean that the Court didn't consider it because the Court has a lot of different issues that go into writing an opinion. For example, there may have been 10,000 issues raised and there's just not enough room... This is an expert court that knows the law in that field. Absolutely, Your Honor. The Veterans Court is well-practiced in this as is the Board. So unless the panel has further questions, for the reasons set forth in our briefs and today, we would respectfully request that the panel dismiss the appeal or alternatively affirm the judgment. Thank you. Thank you, Ms. LaGrange. Mr. Leonard has some rebuttal time, three and a half minutes, possibly. Thank you, Your Honor. First, I'd like to clarify that the issues of what is required to identify the benefit sought, what intent on the part of the veteran is required, and what exactly a sympathetic reading means, all those things and the statement of the decision review officer and whether that's evidence or not. How does intent come into this? Isn't it a question of communication, not intent? A veteran walks in and intends something, but he's got to communicate. Well, actually, the regulation provides, it doesn't even have to be the veteran's intent, to be his representative, his member of Congress, and so forth. So there's no requirement that actually the veteran have the specific intent. Someone has to communicate. Some VA has to be able to know that it has a claim. And that's really, I think, what is the rationale behind that. Claim of a particular ailment? Or just a claim of not well? Well, that it has a claim for a specific disability, but not that he has to state, you know, identify it by name, but he has to provide the evidence, or at least provide a sufficient information that a sympathetic reading would find that. But all these issues that we're discussing here, the problem is that I tried to raise those issues before the Court of Appeals for Veterans Claims, and they refused to address them. And that's the same thing that happened at the Board of Veterans' Appeals. The problem is that they are required to address these issues because they are under the statute necessary to a decision, and they are presented before the court, and it didn't address these. And that's the underlying problem here. In this case, the Veterans Court is trying to evade this court's jurisdiction by ignoring the court's president decisions. As in Harris, that court is trying to avoid review of its decision by this court by pretending that the case only involves a factual dispute, despite the fact that the veteran has clearly raised the legal issues both before the Veterans Court and the BVA below. Twenty years ago this month, the third judicial conference of the Veterans Court, then Chief Judge Nebaker lambasted the VA for failing to implement that court's jurisprudence in its adjudication of benefit claims. He stated that five years of the court's operation has demonstrated that there is a vast gap between the theory and the practice of judicial review, and it is that gap which appears to be frustrating the original intent behind the Veterans Judicial Review Act and the implementation of the goals of meaningful judicial review. He said, I believe my message is clear. There is, I suggest, no system of judicial review which has within it a component part free to function its own way in its own time and with one message to those it disappoints, take an appeal. That is, I'm afraid, what we have today in many of the department's agencies' original jurisdiction. I would suggest that there now exists a vast gap... Thank you. You're over your time, and I don't think that's an argument, Mr. Leonard. It's just reading from someone else's statement. Well, I think it's apt, Your Honor, because this is the problem here, and this court needs to do the same thing as Chief Judge Nebaker did. It needs to make clear to the lower tribunal that it must follow this court's precedence. Thank you, Mr. Leonard. We'll take the case under advisement. Thank you, Your Honor.